**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**KEVIN RUSSELL**                                                                            **PLAINTIFF**

**V.**                                    **NO. 3:15CV00230-JTR**

**CAROLYN W. COLVIN,**                                                              **DEFENDANT**
**Acting Commissioner,**
**Social Security Administration**

**ORDER**

**I. Introduction**:

Plaintiff, Kevin Russell, applied for disability benefits on September 12, 2012, alleging a disability onset date of August 21, 2012. (Tr. at 72). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 81). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Russell has requested judicial review. The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

For the reasons states below, this Court reverses the ALJ's decision and remands for further review.

**II. The Commissioner's Decision:**

The ALJ found that Russell had not engaged in substantial gainful activity since the alleged onset date of August 21, 2012. (Tr. at 74). The ALJ found at Step Two that Russell had the following severe impairments: degenerative disc disorder, diabetes mellitus, and obesity. *Id.* At Step Three, the ALJ determined that Russell's impairments did not meet or

equal a listed impairment. *Id.* Before proceeding to Step Four, the ALJ determined that Russell had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: 1) lift a maximum of ten pounds; 2) sit for six hours of an eight hour work-day; 3) stand/walk for two hours during an eight hour work-day; 4) occasionally stoop, crawl, crouch, and kneel; 5) no climbing of ladders, ropes, or scaffolds; and 6) no exposure to workplace hazards. (Tr. at 75) Next, the ALJ found that Russell was not capable of performing past relevant work. (Tr. at 79). Evaluating testimony from the Vocational Expert, the ALJ held that based on Russell's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform at the sedentary level with added limitations. (Tr. 80). Consequently, the ALJ found that Russell was not disabled. (Tr. 81).

### III. **Discussion:**

  A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision."

>Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

    B.  Russell's Arguments on Appeal

Russell argues that substantial evidence does not support the ALJ's decision to deny benefits.  He contends that, because the ALJ did not assign the correct RFC, the vocational expert's testimony did not constitute substantial evidence.  Russell asserts that, if the ALJ had properly evaluated Russell's credibility, the RFC would have included more limitations and would have eliminated all jobs he could perform.  Finally, Russell argues that because the ALJ failed to obtain any medical opinions from treating sources, he did not fulfill his duty to adequately develop the record.  Specifically, Russell argues that the ALJ should have contacted Russell's treating doctors or ordered a consultative examination.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence.  *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). "In determining the claimant's [RFC], the ALJ has a duty to

establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's "residual functional capacity" – that is, what he or she can still do, in spite of severe impairments. The finding must be based on all relevant evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted). The medical evidence in this case supports a more limited RFC.

Russell broke his back at sixteen when a horse stepped on him, and he underwent spinal fusion surgery. (Tr. at 463). He had rods placed in his back, and a 2013 lumbar x-ray showed a metallic screw that appeared to be broken and slightly offset. (Tr. at 362). While the ALJ asserted that CT scans showed "no abnormalities or acute processes," a 2012 CT scan revealed disc space narrowing at T9-T10, L4-L5, and L5-S1, curvature of the lower thoracic spine convexed to the left, degenerative changes, and anterior spondylolisthesis. (Tr. at 343). A 2014 MRI of the lumbar spine showed some degeneration and a hard disc at L4-L5 and L5-S1. (Tr. at 488).

A physical examination in March 2012 showed tenderness to palpation on the right side of Russell's neck and right trapezius region. (Tr. at 322-23). Examiniations in January and June 2013 showed lumbar paraspinal tenderness. (Tr. at 368, 398). Dr. Sunil Gera, M.D., evaluated Russell on March 20, 2014. He found restricted range of motion in the neck, positive deep tendon reflexes in the knees and ankles, bilaterally positive straight-leg raises,

and a strongly positive Patrick test for hip pain. (Tr. at 487). Dr. Gera further noted moderate spasm bilaterally in the paraspinal lumbar area, severe tenderness at T10 and T11, and moderate tenderness at S1. (Tr. at 488). These symptoms demonstrate impairments that would certainly limit Russell's ability to work. *Delph v. Astrue*, 538 F.3d 940, 947 (8th Cir. 2008)(where a claimant had degenerative disc disease, positive straight-leg raise, muscle spasms, and walked with a cane, the ALJ determined that he could not even perform sedentary work).

Russell treated his back pain with medication on a long-term basis. The ALJ incorrectly stated that Russell did not receive narcotics to help control his pain. (Tr. at 78). This was clear error: Russell was given injections of Toradol, and he was prescribed Naproxen, Neurontin, Tylenol #3, and Tramadol. (Pl. Brief at 21, 22). Russell said the pain medications did not bring relief. (Tr. at 93). He also said that he falls once or twice a week due to dizziness and used a cane at the hearing. He also asked to stand during the hearing. (Tr. at 89-90, 97). The Eighth Circuit has held that a claimant's demeanor at the hearing is an appropriate factor for the ALJ to consider in assessing credibility, as long as it is not the sole basis for his determination. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) (while the ALJ's observations cannot be the sole basis of his decision, it is not an error to include his observations as one of several factors).

The ALJ did limit the hypothetical posed to the vocational expert in a way that more accurately depicted Russell's impairments and RFC. He proposed adding a further limitation to the hypothetical that the person would have to recline for 15-20 minutes three times a day.

5

The vocational expert said there would be no jobs available in that scenario. Had the ALJ chosen to use the second hypothetical for RFC purposes, which accurately reflected Russell's limitations and was supported by evidence in the record, the ALJ would have found Russell to be disabled.

As for credibility, the ALJ weighed the familiar *Polaski* factors and found Russell's complaints of pain less than credible. In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record, and (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In assessing a claimant's credibility, an ALJ must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski*).

The claimant is significantly limited in his daily activities. He is unable to drive or take care of his animals. (Tr. at 76). His wife prepares meals and completes all household chores. *Id*. The Commissioner questioned Russell's claim that he didn't cook because he "testified to helping prepare supper two nights before his hearing." (D. Brief at 11). However, Russell actually testified that while he tried to cook dinner, he had to stop and sit down after 5-10 minutes. (Tr. at 92-3). The Commissioner also stated that Russell sat and

watched TV all day. (D. Brief at 11). On the contrary, Russell testified that he was up and down constantly each day and had to walk to relieve pain. (Tr. at 91-2). He has headaches and nausea and cannot sleep. (Tr. at 76, 93). Russell testified that his low back pain was near constant in both duration and intensity, and it was brought on by physical activity. (Tr. at 76). The broken screw in Russell's back is consistent with the significant pain he described. Russell also claimed his medications caused drowsiness, and were not entirely effective. *Id*.

As for functional restrictions, Russell's pain caused him to stop working. He stated that he left factory work due to pain. (Tr. at 93). While the Commissioner argues that Russell left his past work as a truck driver because his truck broke down, the transcript from the hearing shows that he was "put off driving" due to dizziness. (Tr. at 89). It is unclear if a doctor prescribed a cane for walking, but as noted, Russell walked with a cane to the hearing.

The Commissioner also contends that Russell was not compliant with treatment. He notes that Russell failed to show up for a neurology appointment in 2012 after complaining of dizziness and did not take the recommended antibiotic for a boil on his leg. (D. Brief at 11). Neither of those conditions is listed as a severe impairment, so this argument fails to be persuasive. Moreover, while the Commissioner claimed Russell failed to pursue aggressive surgical repair of the broken screw in his back, it was never determined whether surgery was possible because Russell could not afford follow-up tests. (Tr. at 91). Additionally, Dr. Gera, a pain specialist, opined that interventional treatment for pain would result in a poor

outcome due to extenuating medical factors. (Tr. at 488).

Russell was also compliant with treatment for his diabetes. With respect to Russell's diabetes, he was hospitalized for five days in October 2013 when his blood sugar was over 1000. (Tr. at 463). He was diagnosed with ketoacidosis, which occurs when ketones build up in the blood consistent with diabetes. (Tr. at 412). This conflicts with the ALJ's statement that lab tests showed no evidence of ketones. (Tr. at 77). Russell's blood sugar levels were consistently higher than normal, as were his A1C levels. (Pl. Brief at 19; Tr. at 53-58, 467-480, 498-505). Russell checks his blood sugar five times per day and takes oral medication and shots for his diabetes. (Tr. at 91). Combined with consistent clinic visits for the condition, it appears Russell is attempting to manage his diabetes as best he can.

While the ALJ discussed the *Polaski* factors, his decision on Russell's credibility was not supported by substantial evidence. Russell's limited daily activities, significant pain aggravated by exertion, poor response to pain medication, and functional limitations are a basis for a credibility determination favorable to Russell.

Russell is correct in his argument that the ALJ had a duty to further develop the record. There was no opinion evidence from treating doctors. The only opinion evidence is from two state-agency examiners who merely reviewed the medical records, and the ALJ did not even follow those doctors' recommended RFC of light work. In light of the lack of opinion evidence, the ALJ had a duty to contact the treating sources or order a consultative examination. 20 C.F.R. § 404.1512(e); *Nevland v. Apfel*, 204 F.3d 853, 857-8 (8th Cir. 2000). A further examination is required if there is not sufficient medical evidence in the

record to determine whether a claimant is disabled. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005); *see Cline v. Colvin*, 771 F.3d 1098, 1106 (8th Cir. 2014)(the ALJ is obligated to seek clarifying evidence if concerned that [a treating physician's] treatment notes were inadequate, unclear, or incomplete). The treating physicians in this case offered no narrative reports or opinion evidence, and the consultative examiners only reviewed medical records; thus, the record was incomplete. Rather than order an examination, the ALJ appeared to disregard the medical evidence (both evidence supporting and detracting from his decision) and impose his own medical findings. While an ALJ is not limited to considering only the medical record in determining the RFC, he must ground his findings in "some medical evidence." *Lauer v. Apfel*, 245 F.3d 700, 704-05 (8th Cir. 2001). The ALJ's decision to deny benefits is not supported by the record as a whole, and he failed in his duty to further develop the evidence when the record was incomplete.

## IV. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his RFC determination, in his credibility finding, and in not developing the record as required. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 5th day of October, 2016.

_____
UNITED STATES MAGISTRATE JUDGE